CASE NO. 22-13383-DD

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

ARMANDO BANEGAS GUEVARA, and all others similarly situated
under 29 U.S.C. § 216(b)
Appellant/Employee

v.

LAFISE CORP.,
ROBERT ZAMORA SR. and MARIA J. ZAMORA
Appellees/Employer

_____

**On Appeal From The United States District Court**
**For the Southern District of Florida**
**Case No.: 20-cv-23658-SINGHAL**

INITIAL BRIEF OF APPELLANT/EMPLOYEE

J.H. ZIDELL, ESQ.
J.H. ZIDELL P.A.
Attorney For Appellant/Employee
300 Seventy-First Street, Suite 605
Miami Beach, Florida 33141
Telephone (305) 865-6766
Facsimile: (305) 865-7167
Fla Bar No. 0010121

## CERTIFICATE OF INTERESTED PERSONS

1.    CASSIN, ANGELES G. (Appellees' Counsel/ Employers' Counsel)

2.    GAINES, KYLE T. (Appellees' Counsel/ Employers' Counsel)

3.    GUEVARA, ARMANDO BANEGAS (Appellant/ Employee)

4.    GREENBERG TRAURIG, LLP (Appellees' Counsel/ Employers' Counsel)

5.    J.H. ZIDELL P.A. (Appellant Counsel/ Employee Counsel)

6.    LAFISE CORP. (Appellee/ Employer)

7.    PULECIO-BOEK, DANIEL (Appellees' Counsel/ Employers' Counsel)

8.    SAMOLE, BRIGID F. CECH (Appellees' Counsel/ Employers' Counsel)

9.    SINGHAL, HON. RAAG (U.S. District Judge)

10.    ZAMORA, MARIA J. (Appellee/ Employer)

11.    ZAMORA, ROBERT SR. (Appellee/ Employer)

12.    ZIDELL, J.H. (Appellant Counsel/ Employee Counsel)

J.H. Zidell, PA is aware of no publicly traded company or corporation that has an interest in the outcome of this appeal.

## <u>CORPORATE DISCLOSURE STATEMENT</u>

J.H. Zidell, P.A. has no parent corporation and there are no publicly held corporations that own 10% or more of its stock.

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant requests an oral argument for this appeal. Considering the complex legal and factual issues extant herein, an oral argument will benefit the Court to adjudicate this matter.

## STATEMENT AS TO JURISDICTION

Pursuant to Fed. R. App. P. 28(a)(4), this Court has jurisdiction as follows:

a)      This case involved a claim under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219.  The district court therefore had subject matter jurisdiction under 28 U.S.C. § 1331.

b)      This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291 because it involves the appeal of a final decision of a District Court disposing of post judgment proceedings.

# **TABLE OF CONTENTS**

Page

CERTIFICATE OF INTERESTED PERSONS……………………………..…….ii

CORPORATE DISCLOSURE STATEMENT…………………………..……….iii

STATEMENT REGARDING ORAL ARGUMENT…………………………..…iv

JURISDICTIONAL STATEMENT……………………………………………..……v

TABLE OF CONTENTS……………………………………………….…….…...vi

TABLE OF CITATIONS ..................................................................... viii

STATEMENT OF THE ISSUES...............................................................1

STATEMENT OF THE CASE AND FACTS .........................................2

SUMMARY OF THE ARGUMENT .......................................................8

ARGUMENT AND AUTHORITIES.......................................................9

    i.    Whereas A Matter Of Law The Employers Made Fixed Salary Payments (And Not Disguised Hourly And Overtime Payments), The District Court Erred In Failing To Enter Summary Judgment For The Appellant Rather Than The Appellees…………………………………………………..9

    ii.    The Employers' Failure To Meet The Employer Record Keeping Requirements Of The F.L.S.A. And Related Regulations Estops Them From Verbally Converting Employee's Fixed Salary Into Hourly And Overtime Pay…………………………………………………………14

    iii.    Lump Sum Payments Based On Anticipated, As Opposed To Actual Hours Worked, Cannot Count As Overtime Pay………………………………16

    iv.    The Order On Appeal Incorrectly Concludes That Employee Knew That His Salary Contained Overtime Pay Since He Never Complained About It Pre-Suit………………………………………………………………20

v.    At A Minimum, Summary Judgment Should Be Reversed Due To A Material Issue Of Fact As To Whether The Parties Had A Clear Understanding That Overtime Was Included In The Fixed Salary Payments…………………………………………………………..21

vi.    The Fixed Semi-Monthly Salary Payments Cannot Retroactively Count As Overtime Pay As They Were Not Paid Based On Actual Hours Worked……………………………………………………………25

vii.    The Semi-Monthly Salary Payment Cannot Retroactively Count As Overtime As A Matter Of Law………………………………………….36

viii.    Lafise Corp. Qualifies As Employee's Joint Employer Pursuant To 29 U.S.C. 203(d)………………………………………………………..44

CONCLUSION .......................................................................................50

CERTIFICATE OF SERVICE ................................................................51

CERTIFICATE OF COMPLIANCE ......................................................52

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Acosta v. Min & Kim, Inc.*, No. 15-CV-14310, 2018 WL 500333, at *7 (E.D. Mich. Jan. 22, 2018), *aff'd* 919 F.3d 361, 363-365 (6th Cir. 2019)……………………………………………………15, 18, 33, 34, 35, 42, 43

*Acosta v. Revolutionary Home Health, Inc.*, Civil Action No. 3:17-cv-1992, 2020 WL 1953594, at *14-15, 2020 U.S. Dist. LEXIS 71966, at *63 (M.D. Pa. Apr. 23, 2020)…………………………………………………………………………..27, 40

*Acosta v. Wok on Wheels USA, LLC*, No. SA16CA902FBHJB, 2019 WL 4087621 (W.D. Tex. June 11, 2019), report and recommendation adopted, No. SA-16-CA-902-FB, 2019 WL 5026936 (W.D. Tex. July 26, 2019)………………………35, 43

*Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1316 (11th Cir. 2007)……………………………………………………………………………25

*Allen v. Webster Parish,* No. 99-31017, 2001 WL 564122, at *2 (5th Cir. May 17, 2001)……………………………………………………………………17, 36, 44

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)…………...…38

*Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446……………………………...…28

*Black Warrior Riverkeeper, Inc. v. Cherokee Mining, LLC*, 548 F.3d 986, 989 (11th Cir. 2008)……………………………………………………………………….9

*Buckley v. S.W.O.R.N. Prot. LLC*, No. 1:20-CV-357-HAB, 2022 WL 4598577, at *6 (N.D. Ind. Sept. 30, 2022)……………………………………………….39

*Centeno v. I & C Earthmovers Corp.*, 970 F. Supp. 2d 1280, 1288 (S.D. Fla. 2013)…………………………………………………………………………..24

*Conner v. Cleveland Cnty., N. Carolina*, 22 F.4th 412, 423 (4th Cir. 2022)…………………………………………………………………………19, 20

*Devine v. Ripa & Assocs., LLC*, No. 8:20-CV-349-T-33AEP, 2020 WL 6203453, at *4 (M.D. Fla. Oct. 22, 2020)……………………………………………………….24

*Falk v. Brennan*, 414 U.S. 190, 195 (1973)……………………………………..50

*Gonzalez–Sanchez v. Int'l Paper Co.,* 346 F.3d 1017, 1020 (11th Cir.2003)…………………………………………………………………………………45

*Guevara v. Lafise Corp.,* No. 20-23658-CIV, 2022 WL 3975097, at *3 (S.D. Fla. Sept. 1, 2022)……………………………………………………………………….22

*Hankerson v. Fort Lauderdale Scrap, Inc.*, Case No. 15-60785, 2016 WL 7508242, at *3 (S.D. Fla. Sept. 8, 2016)…………………………………………………47

*Hernandez v. Quality Constr. Performance, Inc.*, No. 1:13-CV-23267-UU, at 2014 WL 12531531, at *2, *3 (S.D. Fla. May 6, 2014)……………………………24, 25

*Hickman v. TL Transportation, LLC,* 318 F. Supp. 3d 718, 721, 722 (E.D. Pa. 2018)……………………………………………………………………….13, 19, 30, 38

*Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 173, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)……………………………………………………………34, 43

*Hyman v. Nationwide Mutual Fire Insurance Co.*, 304 F.3d 1179, 1185 (11th Cir. 2002)……………………………………………………………………………………9

*Jones v. Carswell Prop. Maint., Inc.*, No. 09–22027–CIV, 2012 WL 163035, at *1 (S.D. Fla. Jan. 19, 2012)………………………………………………………….25

*Josendis,* 662 F.3d at 1298…………………………………………………….49

*Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172, 1175–77 (11th Cir. 2012)………………………………………………………………………………..46

*Lee v. Flightsafety Servs. Corp.,* 20 F.3d 428, 432 (11th Cir.1994)……………………………………………………………………………..21

*Lyles v. Burt's Butcher Shoppe & Eatery Inc.*, No. 4:10-CV-53 CDL, 2011 WL 4915484, at *5, *6 (M.D. Ga. Oct. 17, 2011)……………………………21, 39

*Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1352 (11th Cir.1982)……………………………………………………………….21

*McLaughlin v. Stineco, Inc.*, 697 F. Supp. 436 (M.D. Fla. 1988)………………...40

*McLean v. Garage Mgmt. Corp.*, 819 F. Supp. 2d 332, 338–39 (S.D.N.Y. 2011)…………………………………………………………………………19

*Mercedes v. HZ & J Servs., LLC*, No. 620CV565ORLPGBDCI, 2021 WL 1830973 (M.D. Fla. Jan. 27, 2021), report and recommendation adopted, No. 6:20-CV-565-PGB-DCI, 2021 WL 2982419 (M.D. Fla. Feb. 22, 2021)………………………...49

*Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1319–22 (S.D. Fla. 2005)………………………………………………………………………….21

*Off Duty Police Servs., Inc.*, 915 F.3d at 1062–63………………………………..14

*Pascual v. Fam. Boarding Home, Inc.,* No. 11-21221-CIV, 2012 WL 2953768, at *6 (S.D. Fla. July 19, 2012)……………………………………………………….23

*Quezada v. Sante Shipping Lines, Inc.*, No. 11-23246-CIV, 2013 WL 1334516 (S.D. Fla. Mar. 29, 2013)………………………………………………………….45

*Reynolds v. City of Jacksonville*, No. 308-CV-388-J-32HTS, 2009 WL 5067799, at *3 (M.D. Fla. Dec. 16, 2009)…………………………………………………...11

*Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 560 F.3d 1241, 1246 (11th Cir. 2009)………………………………………………………………………………20

*Scalia v. Lovett*, No. 8:19-CV-1323-T-24JSS, 2020 WL 5224335, at *3 (M.D. Fla. July 29, 2020)……………………………………………………………………..50

*Scalia v. KDE Equine, LLC*, 486 F. Supp. 3d 1089, 1104, 1105 (W.D. Ky. 2020)…………………………………………………………………….34, 35, 43

*Scalia v. World Marble & Granite Corp.*, No. 19-CV-11211-ADB, 2021 WL 2481255 (D. Mass. June 17, 2021)……………………………13, 17, 19, 31, 38, 40

*Sec'y of United States Dep't of Lab. v. Am. Made Bags, LLC*, No. 5:19CV863, 2022 WL 479790, at *9 (N.D. Ohio Feb. 15, 2022)……………………………………15

*Senegal v. Fairfield Indus., Inc.,* No. CV H-16-2113, 2018 WL 6079354 (S.D. Tex. Nov. 21, 2018)…………………………………………………………………..34

*Shropshire v. Towing & Auto Repair Mgmt. Corp*, No. 8:20-CV-1931-TPB-CPT, 2021 WL 2904907, at *3 (M.D. Fla. Apr. 23, 2021), report and recommendation adopted, No. 8:20-CV-1931-TPB-CPT, 2021 WL 2895741 (M.D. Fla. July 9, 2021)……………………………………………………………………………49

*Sliwinski v. EZ Sweep Corp.*, No. 8:07-CV-158-T-27MSS, 2008 WL 11385513, at *2–3 (M.D. Fla. July 2, 2008)……………………………………13, 16, 17, 36, 44

*Slugocki v. United States,* 816 F.2d 1572, 1578 (Fed. Cir. 1987)………...17, 35, 43

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 136 S. Ct. 1036, 1047, 194 L.Ed.2d 124 (2016)……………………………………………………………34, 43

*United States Dep't of Lab. v. Fire & Safety Investigation Consulting Servs., LLC,* 915 F.3d 277, 287–88 (4th Cir. 2019)…………………………………………..14

*United States Department Of Labor, Plaintiff-Counter Defendant-Appellee, V. William H. Lovett, Jr., d.b.a. Hardee Animal Clinic, Defendant-Counter Claimant-Appellant*, No. 20-13276, 2021 WL 5321376 (11th Cir. Nov. 16, 2021)………………………………………………………………………………50

*Walling v. Helmerich & Payne*, 323 U.S. 37, 41, 42, 65 S. Ct. 11, 14, 89 L. Ed. 29 (1944)…………………………………………………………………………13, 32

*Walling v. Youngerman–Reynolds Hardwood Co.*, 325 U.S. 419)………………28

*Walsh v. Fusion Japanese Steakhouse, Inc.*, No. 2:19-CV-00496-CCW, 2021 WL 2917795, at *8 (W.D. Pa. July 12, 2021)…………………………………...28, 41

*Yela v. Trending Media Grp., Inc.*, No. 19-21712-CIV, 2020 WL 6271047, at *5–6 (S.D. Fla. Sept. 18, 2020)……………………………………………………47

**Statutes**

29 C.F.R. § 516.2…………………………………………………………14, 15, 39

29 C.F.R. § 516.2(a)……………………………………………………27, 40, 41

29 C.F.R. § 516.2(a)(6)-(9)……………………………………………………39

29 C.F.R. § 516.2(a)(7)………………………………………………………39, 40

29 C.F.R. § 516.5 …………………………………………………....39

29 C.F.R. § 516.5(a)……………………………………………………39

29 C.F.R. § 516.6………………………………………………………..39

29 C.F.R. § 778.108……………………………………………………28

29 C.F.R. § 778.109……………………………………………………28

29 C.F.R. § 778.113………………………………………………....11, 29

29 C.F.R. § 778.113(b) ………………………………………………11, 29

29 C.F.R. § 778.207(b) …………………………………………………...17

29 C.F.R. § 778.309………………………………………………27, 35, 43

29 C.F.R. § 778.310…………………………………17, 18, 19, 20, 27, 33, 35, 42

29 C.F.R. § 778.315………………………………………………...19, 20

29 C.F.R. § 778.317……………………………………………………20

29 C.F.R. § 778.322……………………………………………………20

29 C.F.R. § 778.403……………………………………………………33

29 C.F.R. § 791.2……………………………………………………46

29 C.F.R. § 791.2(a)(3)(i)…………………………………………………46

29 C.F.R. § 791.2(e)(2)…………………………………………………46

28 U.S.C. § 1291……………………………………………………………..v

28 U.S.C. § 1331……………………………………………………………...v

29 U.S.C. § 201-219…………………………………………………………..v

29 U.S.C. § 203(d) …………………………………………..i, vii, 1, 8, 44, 47, 49, 50

29 U.S.C. § 211(c) …………………………………………………………..……39

29 U.S.C. § 216(b)…………………………………………………………………i

## **STATEMENT OF THE ISSUES**

i.   Are Fixed Salary Payments Allowed To Be Retroactively Converted To Hourly Plus Overtime Pay When The Employer Maintains No Documentation As To Weekly Hours Worked, Regular Hourly Rate, And Overtime Pay Rate?

ii.  Was Summary Judgment Properly Entered In The Employers' Favor Finding That, Although Fixed Salary Payments Were Paid To Employee, Employee Was Properly Paid Overtime Pay For All Of His Overtime Hours At Issue?

iii. Was Summary Judgment Properly Entered Finding That Lafise, Corp. Was Not Employee's Joint Employer Pursuant To 29 U.S.C. 203(d)?

## <u>STATEMENT OF FACTS</u>

Employee is from Honduras [DE 68-8, P.6, L.7-11] and came to the United States in the year 1999. [DE 68-8, P.7, L.13-15] Employee was a full-time employee for the Employers from 2004- 2021. [DE 48, ¶ 8] and worked as a domestic service worker at Employers home as a handyman/ maintenance worker [DE48, P.2, ¶ 8];[DE 49, P. 2, ¶ 8]; [DE68-3, P.8, L.16-P.9, L.16]; [DE68-5, P.48, L.5-11]; [DE68-7, P.48, L.8-11]; [DE68-11, P.5, ¶ 27]; [DE68-12, P. 4, ¶5] and was always economically dependent of Employers and under their control during the relevant time period. [DE 68-1, P.89, L.24-P.91, L.7; P.123, L.1-20; P.125, L.21- P.126, L.2]; [DE68-3, P.69, L.3-9; P.75, L.16-22]; [DE68-19, P.1-92]. Employee also performed services for Appellee LAFISE CORP. such as distributing fliers, miscellaneous office repairs and transporting customers and delivering documents. [DE68-3, P.51, L.14-P.53, L.22]; [DE68-6, P.26, L.13-P.27, L.11].Employer LAFISE CORP.'s human resources director was in constant communication with Employee, would give him instructions, managed Employee and would pay him and have him sign a receipt each pay period. [DE 68-1, P.86, L.3-11; P.86, L.25-P.87, L.5];[DE68-3, P.49, L.6-P.50, L.6]; [DE68-5, P.7, L.12-P.8, L.10; P.89 L.7- 11]; [DE68-8, P.63, L.22-P.64, L.3];[DE68-8, P.153, L.1-12]. Employees of the Corporation LAFISE CORP. were involved with Employee's employment and compensation.[DE68-6, P.21, L.3-8; P.23, L.14-P.24, L.10; P.38, L.10-20; P.39, L.24-P.40, L.11; P.41, L.11-

22; P.45, L.18-25; P.47, L.17-P.48, L.13]; [DE68-7, P.29, L.5-22; P.34, L.3-21; P.36, L.18-P.38, L.11; P.41, L.19-P.42, L.4]; [DE68-8, P.152, L.11-22]; [DE68-17, P.1-11]; [DE68-18, P.1-22] Employers LAFISE CORP., ROBERT ZAMORA SR. and MARIA J. ZAMORA entered into an agreement[1] with the Employee to pay a certain amount per month for Employee to use his personal vehicle for services provided to LAFISE, ROBERT ZAMORA SR. and MARIA J. ZAMORA. [DE68-15] with translation at [DE 68-5, P.55, L.7-P.57, L.9]. Appellee LAFISE CORP. also paid Employee's monthly cell phone service. [DE 72-11, P.1-623]; [DE 83-8, ¶ 11]. The Employers paid Employee's salary through one of their foreign companies called Lafise, located in Nicaragua and was always paid on a semi-monthly basis for all of the years he was employed [DE68-1, P.83, L.7-L.22]; [DE68-3, P.42, L.19-P.44, L.12]; [DE68-4, P.16, L.16-20]; [DE68-5, P.48, L.19-P.49, L.14; P.50, L.10-P.51, L.2]; [DE68-6, P.24, L.24-P.25, L.3; P.27, L.12-P.28, L.24]; [DE68-20, P.1-207], and therefore always received 24 paychecks per year. [DE68-5, P.80, L.1-12]; [DE68-20, P.1-207]. Employee signed acknowledgements as to the receipt of his fixed salary when it was paid semi-monthly and every semi-monthly payment issued to Employee stated "salary" on it and was always in the amount of $1,365.88 for each semi-monthly payment with no reference to an hourly rate. [DE 68-20, P.1-

---

[1] Employers claim that Lafise (Latin American Financial Services) referenced in this agreement is different that the Appellant Lafise Corp. However the agreement is signed by Luisa Franchy who is the HR director of Appellant Lafise Corp.

207]. Lafise Employees did not know why emails referred to Employee's semi-monthly payments as salary and were following Mr. Zamoras instructions. [DE 68-5, P.76, L.4-P.77, L.22; P.82, L.19-P.83, L.6; P.83, L.21-P.84, L.9]; [DE 68-6, P.37, L.13-P.38, L.9; P.40, L.2-16; P.47, L.2-P.48, L.6]. Employers failed to issue and provide the Employee with any tax forms during his 15-year employment with them. See [DE 68-1, P.78, L.8-21] [DE 68-8, P.34, L.17-P.35, L.15], nor did the Zamoras ever report the wages that they paid Employee to the U.S. Government from 2005-2021[2]. [DE 68-1, P.78, L.8-19]. Employers prior labor law attorney advised them to maintain accurate records to assure that employees are being paid for all the hours they worked, use a system to track employees time, that salaried employees were entitled to half time pay for hours in excess of 40 per week, and documenting the hourly wage an employee was being paid. [DE 68-9, P.6, L.11-23; P.10, L.4-9; P.17, L.12-P.18, L.3; P.19, L.1-P.20, L.21; P.21, L.6-25; P.24, L.5-21; P.27, L.25-P.28, L.21; P.29, L.15-23]; [DE 68-10, P.5, L.20-P.6, L.20; P.8, L.13-25; P.9, L.2-19; P.13, L.5-12]. Even after being advised by a labor law attorney to do so, Employers did not maintain time records for the Employee. [DE 68-1, P.60, L.23-P.61, L.7; P.104, L.23-P.105, L.8]; [DE68-3, P.48, L.6-25; P.67, L.5-7]; [DE68-9, P.7, L.24-P.8, L.16; P.19, L.24-P.20, L.1; P.20, L.4-21; P.21, L.6-16]; [DE 68-10, P.5, L.20-

---

[2] W2 forms normally reference the identity of the employer and how much the employee is paid.

P.6, L.12]. Employers have nothing in writing, pre-suit, stating that Employee was paid an hourly wage, even though they consulted with a labor law attorney who advised them to do so, and also did not maintain time records for the Employee even though they consulted with a labor law attorney who advised them prior to do so. [DE 68-9, P.7, L.24-P.8, L.16; P.19, L.24-P.20, L.1; P.20, L.4-P.21, L.23]; [DE 68-10, P.5, L.20-P.6, L.12]. No hourly or overtime pay was ever discussed between the parties before the instant lawsuit was filed and Employee never heard of the fixed payments being hourly plus overtime. [DE 68-8, P.128, L.13-20]; [DE 83-3, P.1-2 marked with "[ ]"]; [DE 83-8, ¶ 5 and ¶ 8]. The first time Employee was provided anything in writing with hourly rate information written on it was a text message sent by Employers shortly after Employers were served with the underlying lawsuit and very shortly after they retained counsel for this matter. [DE 68-8, P.128, L.13-20]; [DE 83-3, P.1-2 marked with "[ ]"]; [DE83-8, ¶ 5 and ¶ 8]. [DE 144-1, P.5, L.20-P.6, L.8].   It is Employee's position that the Zamoras created these fictitious hourly and overtime rates as a defense to this lawsuit after they were served with the complaint.  Plaintiff was not an hourly employee and was paid on a salary basis.; [DE68-4, P.27, L.2-12]; [DE68-4, P.26, L.13-25]; [DE68-5, P.66, L.24-P.67, L.9]; [DE68-6, P.37, L.18-P.38, L.9];[DE68-7, P.44, L.20-P.45, L.13]; [DE68-8, P.27, L.9-15]; [DE68-8, P.52, L.1-8]; [DE68-8, P.131, L.17-25];[DE68-8, P.175, L.8-P.176, L.18]; [DE68-20, P.1-207]; [DE 83-8, ¶ 4 and ¶ 5]. Employee and Employers

agreed Employee would work from 8am to 6pm from Monday thru Friday and from 8am to 3pm on Saturdays. Employee's salary covered 57 hours that Employee was supposed to work [DE68-4, P.27, L.2-12]; [DE68-4, P.26, L.13-25]; [DE68-5, P.66, L.24-P.67, L.9]; [DE68-6, P.37, L.18-P.38, L.9];[DE68-7, P.44, L.20-P.45, L.13]; [DE68-8, P.27, L.9-15]; [DE68-8, P.51, L.19 - P.52, L.8]; [DE68-8, P.129, L.7-P.130, L.10]; [DE68-8, P.130, L.22-P.131, L.7]; [DE68-8, P.131, L.17-25];[DE68-8, P.175, L.8-P.176, L.18]; [DE68-20, P.1-207]; [DE 83-8, ¶ 3 and ¶ 4]. Employee always believed he was a fixed salary for his 57 hours weekly. [DE68-8, P.27, L.9-15]; [DE68-8, P.52, L.1-8]; [DE 68-8, P.57, L.3-5]; [DE 68-8, P.126, L.19-P.127, L.23]; [DE 68-8, P.129, L.11-20]; [DE 68-8, P.130, L.2-13]; [DE68-8, P.131, L.2-7]; [DE 68-8, P.131, L.17-25]; [DE 68-8, P.133, L.17-20]; [DE68-8, P.175, L.8-P.176, L.18]; [DE83-8, ¶ 4]. Employers spent a majority of their time outside the USA during the relevant time period and did not know what the Employee did on the job or the weekly hours that Employee worked. [DE68-1, P.57, L.13-24; P.58, L.24-P.59, L.11; P.61, L.14-24; P.65, L.20-P.66, L.4; P.104, L.4-22; P.110, L.24-P.111, L.8]; [DE68-3, P.25, L.7-11; P.67, L.11-P.69, L.9]; [DE68-12, P.9, ¶ 17; P.10 ¶ 18; P.10, ¶ 19]; [DE 144-1, P.4, L.6-19; P.5, L.9-13]. Employers' interrogatory answers and deposition testimony make clear that the Employers paid the Employee a fixed semi-monthly salary based on 57 hours weekly and in spite of whether Employee worked the agreed 57 weekly hours or not.  [DE68-3, P. 74, L.16-P.75,

L.11]; [DE 68-1, P.103, L.1-P.104, L.14]; [DE68-1, P.26, L.13-23]; [DE 68-1, P.57, L.13-24]; [DE68-1, P.58, L.24-P.59, L.11]; [DE 68-1, P.61, L.14-24]; [DE 68-1, P.65, L.20-P.66, L.4]; [DE 68-1, P.104, L.4-22]; [DE 68-1, P.110, L.24-P.111, L.8]; [DE68-3, P.25, L.7-11]; [DE 68-3, P.67, L.11-P.69, L.9]; [DE68-12, P.9, ¶ 17; P.10 ¶ 18; P.10, ¶ 19]; [DE 68-9, P.131, L.12-24]; [DE 68-9, P.132, L.11-14];[DE 68-20, P.1-207]. Employers' Amended  Interrogatory Answers at DE 68-12, ¶ 5 and ¶ 19, states, in relevant part, ". Employee did not work the hours that Employee alleges he was working." In short, Employee was always paid the same amount even if he worked less than his regularly scheduled hours and his pay was never reduced due to absences. [DE 68-9, P.131, L.12-24]; [DE 68-9, P.132, L.11-14]; [DE 68-20, P.1-207]. Employers' sporadic hand written notes state that Employee was paid at $15 per hour when he worked more than 57 hours. Employee never wrote $15/hr. on said notes. [DE 83-4, P.1-4]; [DE 83-4, P.1-4]; [DE 83-8, ¶ 4, ¶ 5, ¶ 8]. The Employers, at their depositions could not articulate exactly what the Employee's regular hourly and overtime rate(s) were. [DE 68-1, P.92, L.25-P.93, L.13]; [DE 68-1, P.141, L.25-P.142, L.11]; [DE 68-2, P.17, L.6-17]; [DE 68-3, P.17, L.6-17]; [DE 68-3, P.60, L.21-22]; [DE 68-4, P.8, L.3-10]; [DE 68-4, P.8, L.22-P.9, L.5]; [DE 68-5, P.74, L.6-15]; [DE 68-5, P.76, L.23-P.77, L.4]; [DE 68-5, P.81, L.24-P.82, L.6]; [DE 68-5, P.91, L.9-22]; [DE 68-5, P.92, L.1-16]; [DE 68-12, P.3, ¶ 2].

## SUMMARY OF THE ARGUMENTS ON APPEAL

The District Court erred in entering summary judgment for the Employers finding that fixed salary payments paid to the Employee were really hourly and overtime payments in disguise. Considering the complete absence of required documentation specifying hourly and overtime pay rates and weekly hours worked, judgment for liability should be entered against Employers and remanding for a jury trial on damages only. At a minimum, summary judgment should be reversed due to material issues of fact regarding whether the fixed salary payments were hourly and overtime payments in disguise.

Summary judgment was also improperly entered finding that Lafise Corp. was not Employee's joint employer pursuant to 29 U.S.C. 203(d). The evidence showed that Lafise Corp. should have been deemed Employee's joint employer as a matter of law or, at a minimum, that a material issue of fact exists for a jury to determine this issue at trial.

8

## i.   WHEREAS A MATTER OF LAW THE EMPLOYERS MADE FIXED SALARY PAYMENTS (AND NOT DISGUISED HOURLY AND OVERTIME PAYMENTS), THE DISTRICT COURT ERRED IN FAILING TO ENTER SUMMARY JUDGMENT FOR THE EMPLOYEE RATHER THAN THE EMPLOYERS.

Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*, applying the same legal standards used by the district court. *Hyman v. Nationwide Mutual Fire Insurance Co.*, 304 F.3d 1179, 1185 (11th Cir. 2002). This Court reviews the district court's interpretation of a federal statute under a *de novo* standard. *Black Warrior Riverkeeper, Inc. v. Cherokee Mining, LLC*, 548 F.3d 986, 989 (11th Cir. 2008).

Argument

Employers made semi-monthly payments to Employee that contained the Word "salary" on them. The orders on appeal incorrectly determined that Employee knew that these "salary" payments were really hourly and overtime payments. These payments were always in the same amount of $1,365.88. Employers failed to maintain any weekly time records for Employee. None of the paystubs contained an hourly pay rate or overtime pay rate. Employers never issued a W-2 tax form or similar document to Employee during the 15 years that they employed him.

9

Employee was paid a semi-monthly salary just like all Lafise Corp. employees [DE 68-5, P.70,L.4-11]. All of his semi-monthly paychecks for the relevant three-year period state "salary" on them. No hourly nor overtime pay rates appear on any of them. In fact, the first time *an hourly rate* appears on any of Plaintiff's paychecks is right *after* this lawsuit was filed and defendants retained counsel. Other than the Zamoras' verbal testimony, there is no document nor other written evidence that states that Employee's normal hourly rate was "$9.62/hr. and that his overtime rate was $14.43/hr[3]." The Zamoras created these fictitious hourly and overtime rates as a defense to this lawsuit *after* they were served with the complaint.[4]

The order on appeal incorrectly determined that Employee knew that $9.62/hr. and $14.43/hr. were his regular and overtime rates for his employment with the Employers despite the complete lack of documentation that indicated Employee was paid by the hour. In fact, the first time Employers claim that the fixed salary payments were really hourly and overtime pay was in a text message sent by merely days after they were served with this lawsuit and retained legal counsel. Under these circumstances, the district court should have entered summary judgment for

---

[3] Employer never issued Employee W2 during his 15-year employment. W2 forms would have shown information as to the amount/type of compensation paid to employee and employer info.

[4] Neither of the Zamoras could articulate what Employee's hourly rate was with any precision at their depositions.

10

Employee.  At the very least, the district court should have determined that there were disputed issue of material fact precluding summary judgment on this issue.

29 C.F.R. § 778.113 is a regulation directly on point for deriving hourly and overtime pay rates from a semi-monthly salary. "A semimonthly salary is translated into its equivalent weekly wage by multiplying by 24 and dividing by 52. Once the weekly wage is arrived at, the regular hourly rate of pay will be calculated as indicated above. The regular rate of an employee who is paid a regular monthly salary of $1,560, or a regular semimonthly salary of $780 for 40 hours a week, is thus found to be $9 per hour…"

"§ 778.113(b) specifically provides for the conversion of salaries covering periods longer than a workweek down to their workweek equivalent. Once converted, the resulting weekly wage is then divided by the "hours the employee's pay is intended to compensate" to reach the regular rate used to calculate overtime." _Reynolds v. City of Jacksonville_, No. 308-CV-388-J-32HTS, 2009 WL 5067799, at *3 (M.D. Fla. Dec. 16, 2009).

In our case, $630 weekly pay divided by 57 hours worked= $11.05/hr.- not $9.62/hr. The overtime rate on $11.05/hr. is $16.58/hr.- not $14.43/hr. [ See DE84, P.6,7, FN19 for the same] [See DE69 FN15]. The _crux_ of Employee's overtime claim is that the _fixed salary_ paid to him by the Defendants semi-monthly _cannot_ retroactively count as hourly plus overtime pay as a matter of law.  The orders on

11

appeal ignored relevant case law showing that the "salary" payments to Employee cannot be retroactively deemed to be hourly and overtime pay as a matter of law based on our facts. Overtime pay must be based and paid on actual, as opposed to anticipated, hours worked. In our case, the fixed salary did not contemplate Employee's actual hours worked. As stated in the facts herein, the Zamoras were out of the United States for the vast majority of the relevant time period and paid Employee a fixed salary even when he worked less than his normal 57 hours weekly work schedule. No time clock or other time recording mechanism was ever used to track Employee's weekly work hours as recommended by their prior labor law attorney.

The Employers doubted that Employee worked 57 hours weekly but paid him his agreed to salary anyway. Therefore, it is undisputed that the fixed salary did *not* pay Employee's *actual* overtime worked weekly. The summary judgment orders should be reversed, with directions to find that Employee is entitled to some amount of overtime pay.

Courts that have encountered factually similar scenarios to this case have uniformly rejected the attempts of employers to retroactively backfit overtime pay into fixed salary payments, especially where the employers failed to maintain some documentation as to hourly and overpay pay and the employee has none. Without documentation or accurate payroll records showing an hourly and corresponding

overtime rate paid, employers cannot retroactively deem fixed salary payments as constituting hourly payments and overtime pay. Several cases prohibit fixed salaries from later being deemed as hourly plus overtime pay. See [DE69, P.14-20; DE84, P.4-11; DE100, P.4-7] *Hickman v. TL Transportation, LLC,* 318 F. Supp. 3d 718, 721 (E.D. Pa. 2018); *Scalia v. World Marble & Granite Corp.,* No. 19-CV-11211-ADB, 2021 WL 2481255 (D. Mass. June 17, 2021) ; *Sliwinski v. EZ Sweep Corp.,* No. 8:07-CV-158-T-27MSS, 2008 WL 11385513, at *2–3 (M.D. Fla. July 2, 2008) and *Walling v. Helmerich & Payne*,[5] 323 U.S. 37, 41, 65 S. Ct. 11, 14, 89 L. Ed. 29 (1944).

These cases underscore why a fixed salary may not retroactively be deemed to include overtime pay. Stated differently, "The FLSA shields employees from precisely the type of payment scheme utilized by Fire & Safety—one that appears to compensate employees for both non-overtime and overtime but in reality, uses a single rate for all hours worked, regardless of whether they are non-overtime or overtime hours. Upholding such a scheme and accepting Fire & Safety's retroactive

---

[5] "But this freedom of contract does not include the right to compute the regular rate in a wholly unrealistic and artificial manner so as to negate the statutory purposes. Even when wages exceed the minimum prescribed by Congress, the parties to the contract must respect the statutory policy of requiring the employer to pay one and one-half times the regular hourly rate for all hours actually worked in excess of 40. Any other conclusion in this case would exalt ingenuity over reality and would open the door to insidious disregard of the rights protected by the Act". *Walling v. Helmerich & Payne*, 323 U.S. 37, 42, 65 S. Ct. 11, 14, 89 L. Ed. 29 (1944).

13

justifications would undercut one of the fundamental purposes of the FLSA: ensuring that employees are adequately paid for all overtime hours…" *United States Dep't of Lab. v. Fire & Safety Investigation Consulting Servs., LLC,* 915 F.3d 277, 287–88 (4th Cir. 2019). The district court ruling defeats that fundamental purpose of the FLSA and cannot stand.

ii. **THE EMPLOYERS' FAILURE TO MEET THE EMPLOYER RECORD KEEPING REQUIREMENTS OF THE F.L.S.A. AND RELATED REGULATIONS ESTOPS THEM FROM VERBALLY CONVERTING EMPLOYEE'S FIXED SALARY INTO HOURLY AND OVERTIME PAY**

It is undisputed that all the semi-monthly paychecks paid to the Employee stated "salary" on them during the 15 years that he worked for the Employers and had no reference to an hourly or overtime rate on any of them. The receipts for payment that Employee signed all stated "salary" on them without regard to hourly pay rates. [DE68-20, P.1-207]; [DE 144-1, P.47, L.10-P.48, L.14].

29 C.F.R. 516.2 requires that employers document the employee's amount of weekly hours worked, and hourly and overtime rates, etc.. "[E]mployers must 'make, keep, and preserve such records of the persons employed by [them] and of the wages, hours, and other conditions and practices of employment maintained by [them] ... as necessary or appropriate for the enforcement of the provisions of' the FLSA." *Off Duty Police Servs., Inc.*, 915 F.3d at 1062–63 (quoting 29 U.S.C. § 211(c)). This includes an employee's "daily and weekly hours, hourly rate of pay, daily or weekly

14

straight-time earnings and overtime pay, and total wages per pay period." *Acosta v. Min & Kim, Inc.*, 919 F.3d 361, 365 (6th Cir. 2019) (citing 29 C.F.R. § 516.2))." *Sec'y of United States Dep't of Lab. v. Am. Made Bags, LLC,* No. 5:19CV863, 2022 WL 479790, at *9 (N.D. Ohio Feb. 15, 2022).

Employers who do *not* abide by the record keeping requirement of these federal regulations should be estopped from claiming that fixed salary payments are really hourly and overtime payments in disguise. In other words, shouldn't there be a consequence for violating these record keeping requirements? Are these *mandatory* or merely *aspirational* regulations? The Order on appeal attributed no real import to this issue at all. [DE 119; DE 136]. The Employee says that the very purpose of these regulations is to insure that hourly employees properly get paid their wages (minimum and overtime) as per the requirements of the F.L.S.A. and so that the employees understand how they are being paid (hourly v. salary, etc..) The Employee urges this Court to consider estoppel as the remedy for the failure to meet the record keeping requirement stated above. That is, employers who do not keep records of weekly time worked nor documents showing the hourly and overtime rates for their employees, cannot later claim that said payments were hourly and overtime compensation. The converse should hold true as well: if the paychecks state an hourly and overtime rate on them with the amount of weekly hours, the employer

15

may not later claim that they are really fixed salary payments. This argument was made, at hearing, to the District Court. [DE 144-1, P.6, L.21-P.7, L.22].

Mrs. Zamora's sporadic handwritten notations that $15 was paid for hours worked *over* 57 weekly cannot rightfully be used to determine that the Zamoras correctly paid Employee overtime via the fixed salary which contemplated 57 weekly hours. First, the overtime rate should have been **$16.58/hr.-**not $15/hr. Second, Employee's claim *does not* involve the sporadic weeks that he worked *more than* 57 hours during the relevant years to this case. The Orders on appeal *incorrectly* conclude that Employee knew that his fixed salary contained overtime pay because he saw Mrs. Zamora's sporadic handwritten notes indicating $15/hr. for some payments made to him when he worked *more* than 57 hours weekly. Reversal should be required accordingly.

### iii.    LUMP SUM PAYMENTS BASED ON ANTICIPATED, AS OPPOSED TO ACTUAL HOURS WORKED, CANNOT COUNT AS OVERTIME PAY

Factually similar to the instant matter, *Sliwinski v. EZ Sweep Corp.* discussed why a "flat payment" for overtime is prohibited by law.  "Defendant's purported payment of a flat amount of $25.00 for all overtime hours worked is not proper under the FLSA. The Department of Labor guidelines specifically provide:

> **"A premium in the form of a lump sum which is paid for work performed during overtime hours without regard to the number of overtime hours worked does not qualify as an overtime premium even though the amount**

16

of money may be equal to or greater than[6] the sum owed on a per hour basis." *29 C.F.R. § 778.310*

Furthermore, "where extra compensation is paid in the form of a lump sum for work performed in overtime hours, it must be included in the regular rate and may not be credited against statutory overtime compensation due." *Id.* (emphasis added); *see also* 29 C.F.R. § 778.207(b)("lump sum premiums which are paid without regard to the number of hours worked are not overtime premiums and must be included in the regular rate.") …. Defendant's purported payment of $25.00 per week for overtime, regardless of hours worked, is a lump sum for work performed during overtime hours. As a result, the weekly payment of $25.00 must be included in the regular rate of pay for the purposes of calculating Plaintiff's overtime rate. *See Slugocki v. United States,* 816 F.2d 1572, 1578 (Fed. Cir. 1987); *Allen v. Webster Parish,* No. 99-31017, 2001 WL 564122, at *2 (5th Cir. May 17, 2001)." *Sliwinski v. EZ Sweep Corp.*, No. 8:07-CV-158-T-27MSS, 2008 WL 11385513, at *2–3 (M.D. Fla. July 2, 2008).

The recent decision in *Scalia v. World Marble & Granite Corp.*, also supports why reversal should occur in this case: namely, fixed sums for overtime, without

---

[6] One argument advanced by the Employers in the district court was that the fixed salary payment yielded a higher hourly rate during the weeks that Appellant did not work his complete 57 hour schedule. This regulation prohibits the lump sum from being counted for overtime pay even if the end result would be a higher hourly wage to the employee during workweeks wherein less hours are worked. To allow otherwise, would result in an end-run around the FLSA's overtime requirements.

17

regard to the actual number of hours worked, is prohibited. "Employers must consider the actual number of hours worked when calculating overtime owed to employees. 29 C.F.R. § 778.310; see also _Acosta v. Min & Kim, Inc._, 919 F.3d 361, 363–64 (6th Cir. 2019) (affirming district court's opinion and holding that employers violated the FLSA's overtime provisions because the employees worked more than 40 hours per week and "received the same amount—the 'guaranteed wage'—no matter how many hours they worked"). DOL's interpretive regulations addressing the issue of lump sum payments state that:

[a] premium in the form of a lump sum which is paid for work performed during overtime hours without regard to the number of overtime hours worked does not qualify as an overtime premium even though the amount of money may be equal to or greater than the sum owed on a per hour basis.... The reason for this is clear. If the rule were otherwise, an employer desiring to pay an employee a fixed salary regardless of the number of hours worked in excess of the applicable maximum hours standard could merely label as overtime pay a fixed portion of such salary sufficient to take care of compensation for the maximum number of hours that would be worked. The Congressional purpose to effectuate a maximum hours standard by placing a penalty upon the performance of excessive overtime work would thus be defeated. For this reason, where extra compensation is paid in the form of a lump sum for work performed in overtime hours, it must be included in the regular rate

18

and may not be credited against statutory overtime compensation due. 29 C.F.R. § 778.310;[5] see also *McLean v. Garage Mgmt. Corp.*, 819 F. Supp. 2d 332, 338–39 (S.D.N.Y. 2011) (stating that "DOL regulations require the payment of overtime wages to correspond directly to the number of overtime hours" and citing to 29 C.F.R. § 778.310 in support); *Hickman*, 318 F. Supp. 3d at 722 (noting 29 C.F.R. § 778.310 and stating that **"if an employee's total hours fluctuate from week to week, an employer may use a lump sum payment to satisfy its overtime obligations to the employee only if the sum is based on the number of overtime hours actually worked")**" [emphasis added]. *Scalia v. World Marble & Granite Corp.*, No. 19-CV-11211-ADB, 2021 WL 2481255, at *6 (D. Mass. June 17, 2021).

Similarly, the 4th Circuit Appellate Court in the very recent decision of *Conner v. Cleveland Cnty., N. Carolina*, discusses why the fixed salary in this case cannot be deemed to include overtime pay. "Section 778.315 is part of a large body of official interpretative guidance from the Department on the FLSA's overtime provisions. For instance, § 778.310 specifies that lump sum payments for overtime work do not qualify as an overtime premium under the FLSA in some instances, noting that "[i]f the rule were otherwise, an employer desiring to pay an employee a fixed salary regardless of the number of hours worked in excess of the applicable maximum hours standard could merely label as overtime pay a fixed portion of such salary sufficient to take care of compensation for the maximum number of hours that

19

would be worked," which would "defeat[ ]" the congressional intent "to effectuate a maximum hours standard by placing a penalty upon the performance of excessive overtime work." 29 C.F.R. § 778.310. Section 778.317 disallows agreements for improper overtime compensation. 29 C.F.R. § 778.317. Further, § 778.322 indirectly references § 778.315 to provide guidance for calculating overtime when an employee's work week is reduced. 29 C.F.R. § 778.322." *Conner v. Cleveland Cnty., N. Carolina*, 22 F.4th 412, 423 (4th Cir. 2022).

### iv.    THE ORDER ON APPEAL INCORRECTLY CONCLUDES THAT EMPLOYEE KNEW THAT HIS SALARY CONTAINED OVERTIME PAY SINCE HE NEVER COMPLAINED ABOUT IT PRE-SUIT

The Response, [DE 127, P.6] further claims that [DE 119] correctly determined Employee's hourly and overtime rates because: Employee acknowledged receipt of every payment and never complained presuit to the Employers or anyone else that he was not being paid overtime nor did he tell anyone that he did not believe he was being paid overtime for the 17 extra hours worked per week. First, this is clearly a disputed fact. [DE 68-8, P.56, L.19-22; P.152, L.23-P.153, L.2] Second, these facts are *irrelevant* to the determination of whether Employee was correctly paid overtime. See [DE 84, P.20] There is no pre-suit requirement under the FLSA. "We do not say that pre-suit notice is usually required or even often required under the FLSA…" *Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 560 F.3d 1241, 1246 (11th Cir. 2009). "There is no requirement under the

20

FLSA for a plaintiff to have provided notice of an alleged wage violation prior to bringing suit." _Morrison v. Exec. Aircraft Refinishing, Inc._, 434 F. Supp. 2d 1314, 1319–22 (S.D. Fla. 2005). "Neither an employee nor an employer can effectively waive or contractually abridge any of the provisions of the Fair Labor Standards Act. _Lee v. Flightsafety Servs. Corp.,_ 20 F.3d 428, 432 (11th Cir.1994); _Lynn's Food Stores, Inc. v. United States,_ 679 F.2d 1350, 1352 (11th Cir.1982)." _Lyles v. Burt's Butcher Shoppe & Eatery Inc._, No. 4:10-CV-53 CDL, 2011 WL 4915484, at *5 (M.D. Ga. Oct. 17, 2011). As [DE 120,FN 5] states, Employee directly disputed the Employers' contention that he was extorting them by claiming overtime which he was not owed.

### v.    AT A MINIMUM, SUMMARY JUDGMENT SHOULD BE REVERSED DUE TO A MATERIAL ISSUE OF FACT AS TO WHETHER THE PARTIES HAD A CLEAR UNDERSTANDING THAT OVERTIME WAS INCLUDED IN THE FIXED SALARY PAYMENTS

Summary Judgment was improperly entered for the Employers, finding that Employee knew that his salary was really overtime pay in disguise. While the order on summary judgment states that it was based on "a close call", courts in this District have routinely denied summary judgment in cases, unlike the instant matter, wherein the employer maintained at least some accurate time records for the complaining

employee[7]. The Employers further claim that the Employee signed receipts acknowledging that he had been paid in full and that these receipts dispose of his overtime claims herein. However, these "payment receipts" are *not* what the Employers wish they were. Again, they reflect nothing as to hourly and/or overtime pay. The fact that Employee acknowledged the receipt of his semi-monthly salary

---

[7] Here, the Employee submitted an enormous amount of evidence that he was paid a fixed salary, yet the District Court Judge found that it was not enough to withstand summary judgment for the Employers. This evidence was cited to in one of the orders on appeal, Employee cites deposition testimony of Employer Maria Zamora where she testified that she always paid him for his scheduled work, even on occasions where he did not show up to work or was ill. (DE 68-4, P.27, L.2–12; P.26 L.13–25). Employee cites to testimony of an employee of the Appellant Corporation who testified that the Zamoras instructed him on the amount to be paid monthly to Employee and his schedule. (DE 68-5, P.66, L.24–P.67, L.9). Employee cites to testimony of another company employee who testified that he was unsure whether payments to Employee were technically salary payments, but understood the payments were made to him as compensation for his work for the Employers. (DE 68-6, P.37, L.18–P.38, L.9). Employee cites to testimony from yet another employee of the Appellant Corporation who testified that Employee was usually paid fixed amounts twice per month but did not recall whether he was paid an hourly rate. (DE 68-7, P.44, L.20–P.45, L.13). Employee cites to his own deposition testimony where he testified concerning an agreement to get an extra $500 every 15 days, (DE 68-8, P.27, L.9–15), testified that his hourly rate was $11 and that he received a salary, (DE 68-8, P.51, L.19–P.52, L.8), testified generally that he was paid a salary and not an hourly wage, (DE 68-8, P.129, L.7–130, L.10; P.130, L.22–P.131, L.7), and testified that he was paid the same salary regardless of hours worked, (DE 68-8, P.131, L.17–25; P.175, L.8–P.176, L.18). Employee cites several hundreds of pages of paystubs reflecting payments he received from the Zamoras. (DE 68-20, P.1–207). These paystubs only included payments made to Employee, did not contain information regarding hours worked, and varied in payment amount. *Id.* Finally, Employee cites to his own declaration where he states he was paid a salary and was never aware of receiving any hourly wage. (DE 83-8 ¶¶ 3–4)." *Guevara v. Lafise Corp.*, No. 20-23658-CIV, 2022 WL 3975097, at *3 (S.D. Fla. Sept. 1, 2022).

22

payments does *not,* as the Employers urge, translate to Employee's acknowledgement that he was correctly paid the overtime pay that the Employers owed him. This District has seen several cases wherein summary judgment was denied to the employer even though *at least* some records[8] of weekly time worked had been preserved.   In <u>*Pascual v. Fam. Boarding Home, Inc*</u>., the employer did have their employees sign and "certify" bi-weekly time sheets containing the regular and overtime hours purportedly worked and paid each pay period; the employer's motion for summary judgment was denied. The Court reasoned

"…. because the Defendants' "time sheets"[9] are inconsistent with the number of hours that the Plaintiffs contend that they worked, there are genuine issues of material facts that remain as to the number of overtime hours each Plaintiff worked for which they were not compensated, and thus summary judgment on this issue is not appropriate." <u>*Pascual v. Fam. Boarding Home, Inc.,*</u> No. 11-21221-CIV, 2012 WL 2953768, at *6 (S.D. Fla. July 19, 2012). Also see "These records do not state the beginning and end times for each day and, usually, do not indicate the number

---

[8] In this case, there are *no* time records of weekly time *actually* worked by the Employee.

[9] In the instant case, there is no reference to regular and overtime hours worked by Employee whatsoever in the "receipts" that Employers claim should dispose of this case. Here, the Employee has stated since this case's inception through deposition, etc., that he received a fixed salary and there was *no mention* of that salary being regular and overtime pay "in disguise" until after the Employers received this lawsuit.

23

or length of breaks taken. (Id.); see *Hernandez*, 2014 WL 12531531, at *3 ("Summary judgment should be denied where the employer's time records reflect the total daily hours worked each day without indicating a specific work schedule or whether there were any breaks in the day."); see also *Centeno v. I & C Earthmovers Corp.*, 970 F. Supp. 2d 1280, 1288 (S.D. Fla. 2013)(finding defendants' records unreliable because, among other reasons, the "time sheets [did] not indicate what time the plaintiffs arrived at work each day, if they took any breaks during the work day or what time they left work"). Similarly, the records reflect only rounded numbers of hours worked, such as 10.00 or 9.50 hours. (Id.); see *Hernandez*, 2014 WL 12531531, at *3 ("Defendants' time records fall under the latter category and do not merit summary judgment .... Often the total amount of hours worked is a round 8.0, though this number may also be 13.5 or 4.0. This round number does not reflect Plaintiff's actual work schedule and does not indicate whether Plaintiff took any breaks during the day.") *Devine v. Ripa & Assocs., LLC*, No. 8:20-CV-349-T-33AEP, 2020 WL 6203453, at *4 (M.D. Fla. Oct. 22, 2020).

In this case, the Employers failed to keep <u>any</u> adequate records of the *actual* time Employee worked each week and issued the same semi-monthly salary

24

payment[10] to him even preceding and during the relevant years to this case. All of these "payments" stated "salary" on them, and *none* contained any hourly or overtime pay information[11]. Just because the Employers claim that the "salary" payments were really disguised "hourly and overtime" pay, that is *sorely* insufficient to result in summary judgment for the Employers. In fact, as argued in Employee's motion for summary judgment, liability should have been established in his favor, leaving damages to be determined by a jury at trial.  At a *minimum*, summary judgment should be reversed since there are prominent factual issues as to whether Employee knew that the salary payments were really overtime pay in disguise.

### vi.   THE FIXED SEMI-MONTHLY SALARY PAYMENTS CANNOT RETROACTIVELY COUNT AS OVERTIME PAY AS THEY WERE NOT PAID BASED ON ACTUAL HOURS WORKED

The Employers concede at DE 74, P.2, that "the Zamora's spent most of their time abroad" and did not know if the Employee worked the 57 weekly hours that his

---

[10] Employee's position is that the Employers concocted the hourly and overtime pay theory underlying these salary checks shortly after this lawsuit was filed.

[11] "The employee's burden is not great and the Eleventh Circuit has found an employee can successfully shift the burden of proof by presenting his own testimony indicating the employer's time records cannot be trusted and that he worked the claimed overtime." *Jones v. Carswell Prop. Maint., Inc.*, No. 09–22027–CIV, 2012 WL 163035, at *1 (S.D. Fla. Jan. 19, 2012) (on a renewed motion for judgment as a matter of law describing the burden-shifting scheme) (citing *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1316 (11th Cir. 2007))". *Hernandez v. Quality Constr. Performance, Inc.*, No. 1:13-CV-23267-UU, 2014 WL 12531531, at *2 (S.D. Fla. May 6, 2014).

salary was supposed to cover. The Employers, at their depositions could not articulate exactly what the Employee's regular hourly and overtime rate(s) were. [DE 68-1, P.92, L.25-P.93, L.13]; [DE 68-1, P.141, L.25-P.142, L.11]; [DE 68-2, P.17, L.6-17]; [DE 68-3, P.17, L.6-17]; [DE 68-3, P.60, L.21-22]; [DE 68-4, P.8, L.3-10]; [DE 68-4, P.8, L.22-P.9, L.5]; [DE 68-5, P.74, L.6-15]; [DE 68-5, P.76, L.23-P.77, L.4]; [DE 68-5, P.81, L.24-P.82, L.6]; [DE 68-5, P.91, L.9-22]; [DE 68-5, P.92, L.1-16]; [DE 68-12, P.3, ¶ 2]. All of the check stubs state "salary" on them without reference to hourly pay at all. [DE 68-20, P.1-207]. All of the internal emails from Lafise Corp., which processed and paid Employee's salary from a Zamora Company Bank in Panama, refer to Employee's salary. [DE 68-17-17, PP.3, 4, 9, 10 and 11]. Lafise Corp.'s personnel who handled his semi-monthly payments did not know why the emails referred to Employee's payment consistently as a "salary" and testified that Mr. Zamora said to do "it that way". [DE 68-5, P.76, L.4-P.77, L.22]; [DE 68-5, P.82, L.19-P.83, L.6]; [DE 68-5, P.83, L.21-P.84, L.9]; [DE 68-6, P.37, L.13-P.38, L.9]; [DE 68-6, P.40, L.2-16]; [DE 68-6, P.47, L.2-P.48, L.6]. Employee always thought that he was paid a fixed salary. [DE68-8, P.27, L.9-15]; [DE68-8, P.52, L.1-8]; [DE 68-8, P.57, L.3-5]; [DE 68-8, P.126, L.19-P.127, L.23]; [DE 68-8, P.129, L.11-20]; [DE 68-8, P.130, L.2-13]; [DE68-8, P.131, L.2-7]; [DE 68-8, P.131, L.17-25]; [DE 68-8, P.133, L.17-20]; [DE68-8, P.175, L.8-P.176, L.18]; [DE83-8, ¶ 4]. No hourly or overtime pay was ever discussed with the Zamoras,

concerning the fixed semi-monthly payments, before this lawsuit was filed. [DE 68-8, P.128, L.13-20]; [DE 83-3, P.1-2 marked with "[ ]"]; [DE83-8, ¶ 5 and ¶ 8]. The *missing and critical* link is the complete absence of payroll records or other "records" indicating that Employee's fixed salary was *really* hourly plus overtime pay in disguise.

The District Court Judge did not opine that the absence of payroll and other records[12] was significant; however, under the F.L.S.A. and caselaw interpreting the same, it is a "big deal"[13]. "Furthermore, § 516.2(a) requires employers to record employees' straight pay separately from overtime payments on a weekly basis. *See e.g., Acosta v. Revolutionary Home Health, Inc.*, Civil Action No. 3:17-cv-1992, 2020 WL 1953594, at *14-15, 2020 U.S. Dist. LEXIS 71966, at *63 (M.D. Pa. Apr. 23, 2020) (granting summary judgment to the Plaintiff Department of Labor, that the defendants violated § 516.2(a) when they failed to keep records of the daily or weekly straight time and overtime earnings where the employer maintained records

---

[12] Had the Employers maintained hourly and overtime pay records as required, then their argument regarding the applicability of *§ 778.309* would at least be colorable. Without these records and without other evidence to show that there was a *clear understanding between the parties* that the salary was really hourly and overtime pay in disguise, the case law is clear that *§ 778.310* is the operative C.F.R. provision based on the facts of this case.

[13] The Employee adopts, so as not to copy and paste the same, his same arguments and citations of authority in *DE 69 PP. 19 - 20* as to the requirements and importance of the employer maintaining proper payroll records including regular pay rate, overtime pay rate, regular hours worked weekly and overtime hours worked weekly.

in two-week intervals)." *Walsh v. Fusion Japanese Steakhouse, Inc.*, No. 2:19-CV-00496-CCW, 2021 WL 2917795, at *8 (W.D. Pa. July 12, 2021).

"The "regular rate" of pay under the Act cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee; it must be drawn from what happens under the employment contract (*Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446). The Supreme Court has described it as the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed—an "actual fact" (*Walling v. Youngerman–Reynolds Hardwood Co.*, 325 U.S. 419)…." **29 C.F.R. § 778.108**

"The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid…." **29 C.F.R. § 778.109**

(b) "Salary for periods other than workweek. Where the salary covers a period longer than a workweek, such as a month, it must be reduced to its workweek equivalent. A monthly salary is subject to translation to its equivalent weekly wage by multiplying by 12 (the number of months) and dividing by 52 (the number of weeks). A semimonthly salary is translated into its equivalent weekly wage by multiplying by 24 and dividing by 52. Once the weekly wage is arrived at, the regular hourly rate of pay will be calculated as indicated above. The regular rate of an

28

employee who is paid a regular monthly salary of $1,560, or a regular semimonthly salary of $780 for 40 hours a week, is thus found to be $9 per hour…" **29 C.F.R. § 778.113.**

At DE 74, P. 2, the Employers arrive at $630 as Employee's weekly pay; however, they derive that amount pursuant to the formula for semimonthly salaries paid to employees as detailed in 29 C.F.R. § 778.113(b). This section of the C.F.R. speaks to *salaried* employees: not hourly. When $630 (the fixed weekly pay derived from Employee's semi-monthly paychecks pursuant to 778.113(b)) is divided by the 57 hours that the salary contemplated, $630/57hours= **$11.05/hr.** as the regular rate which yields a corresponding overtime rate of **$16.58/hr**. Employers' calculation of **$9.60/hr. and $14.40/hr.** as Employee's regular and overtime pay rates is contrary to 778.113(b)'s scheme and otherwise invents **$9.60/hr.** as a regular pay rate which never appeared even once, verbally or written, until after this lawsuit was filed[14].

The Zamoras' almost complete absence from the United States during the relevant time-period underscores that Employee's semi-monthly pay was based on anticipated rather than actual-hours worked. The Employers' semi-monthly pay scheme further highlights that Employee was paid the *same* fixed amount despite him working increased overtime hours during months containing 5—as opposed to

---

[14] Employee worked for approximately 15 years for the Employers and there is no paystub, text message, email, paper etc… which references $9.60/hr. as his regular pay rate; this was created post-lawsuit by the Employers and/or their Counsel.

4—weeks and regardless of if he worked 57 hours and missed hours of work. [DE 68-9, P.131, L.12-24]; [DE 68-9, P.132, L.11-14];[DE 68-20, P.1-207]; [DE 83-2]. Employers' semi-monthly payments resulted in Employee receiving the same payment for months containing (4) weeks as those months containing (5) weeks. For example, during the months of January, April, May, August, October and December of 2019, there were 5 weeks. [DE68-20, P.1-207]; [DE 83-2]. As Employers state at DE 74, P.2, Employee's weekly schedule was 8am to 6pm M-F and from 8am to 3pm on Saturdays. Pursuant to the C.F.R. regulations cited above, each workweek stands alone and must be measured separately to determine the amount of overtime worked therein. If Employee worked an extra workday during his semi-monthly salary payments, his total hours worked would be greater than 57 hours weekly which, when divided into the $630 that he was paid weekly, would yield a different hourly rate and corresponding overtime rate as well. Perhaps this is why the case law forbids a fixed salary payment based on *estimated*, as opposed to *actual*, overtime hours worked by the employee. *Hickman v. TL Transportation, LLC,* 318 F. Supp. 3d 718, 721 (E.D. Pa. 2018). (earning statements based on fixed day pay could not be construed to include overtime as contemplated by FLSA).  In *Hickman*, unlike this case, the employer clearly advised the employees, in writing, that the $160 day rate included regular pay for 8 hours and 2 hours overtime pay. The court found that the *Hickman* pay scheme violated the FLSA's overtime requirements since these

30

fixed payments were based on *anticipated*—as opposed to *actual*—overtime hours worked by the employees. In the instant case, the Zamoras' testimony is clear that the fixed semi-monthly payments made to Employee were based on 57 *anticipated* hours that he would work weekly since they (the Zamora's) both were absent from the U.S. for considerable periods during the relevant time period. The Zamoras claim that they paid Employee for 57 hours weekly in spite of the fact that they don't believe he worked the same. Also see the very recent decision in <u>*Scalia v. World*</u> <u>*Marble & Granite Corp.*</u>, No. 19-CV-11211-ADB, 2021 WL 2481255 (D. Mass. June 17, 2021) (fixed salary payments to non-exempt employees do not count as overtime pay.).

Expectedly, the Zamoras are <u>not</u> the first employers to claim that a fixed salary was really hourly and overtime pay combined. When Plaintiff worked *over*[15] 57 hours weekly, the Zamoras say they paid him at $15/hr separate and apart from his fixed semi-monthly payment. It appears that the Supreme Court faced an analogous factual scenario of an employer who paid its employees according to a "split-day

---

[15] Although Employee could have included his occasional work beyond 57 hours weekly in his claim, he opted *not to* do so. See statement of claim at DE 9. There were occasions when the Employers failed to pay him when he worked beyond 57 weekly hours. [DE 68-8, P.53, L.8-23]; [DE 68-5, P.54, L.8-16]; [DE 68-5, P.131, L.12-P.132, L.19]. Additionally, as argued herein, Employee's overtime rate was greater than $15.00/hr; therefore, these extra payments were deficient overtime pay.

plan". "Instead the plan provided for a fictitious regular rate[16] consisting of a figure somewhat lower than the rate actually received. This illusory rate was arbitrarily allocated to the first portion of each day's regular labor; the latter portion was designated 'overtime' and called for compensation at a rate one and one-half times the fictitious regular rate[17]." *Walling v. Helmerich & Payne*,[18] 323 U.S. 37, 41, 65 S. Ct. 11, 14, 89 L. Ed. 29 (1944).

---

[16] The fixed $1,365.88 semi-monthly payment simply *does not* yield a constant hourly and overtime rate which is presumably why both Mr. and Mrs. Zamora could not specifically articulate Employee's hourly rate. The semi-monthly salary was the *same* both for months containing 4 and 5 weeks and even when the Employee missed work or was late according to the Employers. While Employee was presumably paid for 114 hours for each semi-monthly check, he was paid the *same* amount for months containing 5 weeks wherein he worked *more than* 114 hours during each pay period. Thus, these hourly and overtime rates were *illusory*; they changed according to how many weeks and hours were encompassed in his semi-monthly checks.

[17] The Employers could not articulate the Employee's regular rate at their depositions; they both said that it was nine dollars and change. The Employers further stated that, although Employee's regular rate was under $10/hr. they, nevertheless, paid him at an overtime rate of $15/hr. when he worked over 57 hours weekly. This pay scheme resembles the split-day plan that the Supreme Court found invalid *Walling v. Helmerich & Payne* (1944).

[18] "But this freedom of contract does not include the right to compute the regular rate in a wholly unrealistic and artificial manner so as to negate the statutory purposes. Even when wages exceed the minimum prescribed by Congress, the parties to the contract must respect the statutory policy of requiring the employer to pay one and one-half times the regular hourly rate for all hours actually worked in excess of 40. Any other conclusion in this case would exalt ingenuity over reality and would open the door to insidious disregard of the rights protected by the Act". *Walling v. Helmerich & Payne*, 323 U.S. 37, 42, 65 S. Ct. 11, 14, 89 L. Ed. 29 (1944).

"As *Min & Kim II* explained in analyzing Section 310, while "[a]n employer may lawfully ... star[t] with a fixed salary and a shift schedule and wor[k] backwards to compute hourly and overtime rates," "[a] salary that supposedly includes overtime pay but does not vary with actual hours worked cannot include 'overtime' as the Act defines it." *Min & Kim II*, 919 F.3d at 364 (citing 29 C.F.R. 778.310); *see also* 29 C.F.R. § 778.403 ("Section 7(f) is the only provision of the Act which allows an employer to pay the same total compensation each week to an employee who works overtime and whose hours of work vary from week to week."). In other words, an employer is not entitled to flout 29 C.F.R. § 778.310 (by paying lump sums for *varying* amounts of overtime, i.e., where Section 309 does not apply) and then claim, "no harm, no foul." Instead, the alleged overtime is included in the regular rate as straight-time pay and does *not* count toward the overtime premium due the employee for hours worked past 40. As the District Court explained (and the Sixth Circuit subsequently affirmed) in *Min & Kim I*."… "Although it is possible that Defendants might have paid employees the same wages had they complied with the FLSA recordkeeping and overtime requirements, this does not excuse them from FLSA non-compliance here.... It is possible that Defendants could pay their employees the same amounts if they selected an hourly rate and paid overtime compensation as required by the FLSA, as they did with their system of paying a "guaranteed wage," but *what matters is not just the end result, but the methodology*

33

*used.* The reason for compliance is to ensure that employees are indeed paid overtime. Without adhering to the system required by the FLSA, employees lose the protection of that statute and have no way of proving that they are entitled to overtime pay. The Supreme Court has held that "when employers violate their statutory duty to keep proper records, and employees thereby have no way to establish the time spent doing uncompensated work, the remedial nature of [the FLSA] and the great public policy which it embodies" cannot be vindicated. *Acosta v. Min & Kim Inc.*, No. 15-CV-14310, 2018 WL 500333, at \*7 (E.D. Mich. Jan. 22, 2018), *aff'd*, 919 F.3d 361 (6th Cir. 2019) ("*Min & Kim I*") (emphasis added) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 136 S. Ct. 1036, 1047, 194 L.Ed.2d 124 (2016) and *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 173, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989))." *Scalia v. KDE Equine, LLC*, 486 F. Supp. 3d 1089, 1105 (W.D. Ky. 2020).

"A salary that supposedly[19] includes overtime pay but does not vary with actual hours worked cannot include "overtime" as the Act defines it". *See* 29 C.F.R.

---

[19] Employers' Counsel implements the same "supposed to work" language at DE 74, P.7 and cites to *Senegal v. Fairfield Indus., Inc.*, No. CV H-16-2113, 2018 WL 6079354 (S.D. Tex. Nov. 21, 2018) which "ironically" supports summary judgment in Employee's favor on this issue based on these facts. **"[H]owever, it would be improper to pay the same rate of $1,060 per week for a *varying* number of hours each week *even if the varying number of hours never exceeded 84.* Although the second scenario would seem to benefit the worker as he would make the same pay, never work more than he did in the first scenario, and would presumably work less on occasion, such a scenario is expressly prohibited because it is**

§ 778.310. _Acosta v. Min & Kim, Inc.,_ 919 F.3d 361, 364 (6th Cir. 2019). "…The reason for this is clear. If the rule were otherwise, an employer desiring to pay an employee a fixed salary regardless of the number of hours worked in excess of the applicable maximum hours standard could merely label as overtime pay a fixed portion of such salary sufficient to take care of compensation for the maximum number of hours that would be worked[20]. The Congressional purpose to effectuate a maximum hours standard by placing a penalty upon the performance of excessive overtime work would thus be defeated. For this reason, where extra compensation is paid in the form of a lump sum for work performed in overtime hours, it must be included in the regular rate and may not be credited against statutory overtime compensation due." 29 C.F.R. § 778.310[21].  _See Slugocki v. United States,_ 816 F.2d

---

**against the purpose of the FLSA to 'effectuate a maximum hours standard.' "** _Id._ (emphasis added) (quoting 29 C.F.R. § 778.310). _Scalia v. KDE Equine, LLC_, 486 F. Supp. 3d 1089, 1104 (W.D. Ky. 2020). Also see _Acosta v. Wok on Wheels USA, LLC_, No. SA16CA902FBHJB, 2019 WL 4087621 (W.D. Tex. June 11, 2019), report and recommendation adopted, No. SA-16-CA-902-FB, 2019 WL 5026936 (W.D. Tex. July 26, 2019) ( Fixed payment amounts cannot comply with _778.309_ when the employee is paid the same amount even when [he] works less hours due to going home early, days off, and when the employer does not track "break" time.)

[20] This is exactly what the Employers and/or their Counsel appear to have done via their attempts to transmogrify the fixed salary payments into disguised regular and overtime pay after this lawsuit was filed.

[21] Contrast to "Where an employee works a regular fixed number of hours in excess of the statutory maximum each workweek, it is, of course, proper to pay him, in addition to his compensation for non-overtime hours, a fixed sum in any such week for his overtime work, determined by multiplying his overtime rate by the number of overtime hours regularly worked." 29 C.F.R. § 778.309. Since the Employers here

1572, 1578 (Fed. Cir. 1987); *Allen v. Webster Parish,* No. 99-31017, 2001 WL 564122, at *2 (5th Cir. May 17, 2001)." *Sliwinski v. EZ Sweep Corp.*, No. 8:07-CV-158-T-27MSS, 2008 WL 11385513, at *2–3 (M.D. Fla. July 2, 2008).

### vii. THE SEMI-MONTHLY SALARY PAYMENT CANNOT RETROACTIVELY COUNT AS OVERTIME AS A MATTER OF LAW

Employee was always paid a fixed salary semi-monthly (twice a month – every 15 days)[22] for 57 hours *per week* during the relevant time period. No hourly wage nor overtime rate is stated on any of Employee's regular bi-weekly salary payments and receipts. These payment records only show that Employee was paid a fixed salary for his 57-hour regular work week: the check "stubs" clearly state "salary" on them. The Employers emails all refer to all payments as a salary. [DE

---

concede that the fixed semi-monthly payment was made for 57 hours weekly or 114 hours for each semi-monthly check, the $1,365.88 semi-monthly (or $630.00 weekly) fixed payment must be divided by 57 hours to arrive at the correct regular hourly rate. $630.00/57hours = $11.05/hr. which carries a $16.58/hr. overtime rate. Therefore, instead of paying Employee **$630.00 semi-monthly**, the Employers should have paid him 40(regular hours) x $11.05/hr.= $442.00 + 17(OT) hours weekly x $16.58/hr.= $281.86 (OT) which totals **$723.86 semi-monthly**. Alternatively, since Employee only received 24, as opposed to 26, checks per year, there were (4) weeks per year wholly unpaid and unaccounted for as a result of the Employers' semi-monthly pay scheme. Thus, summary judgment establishing the Employers' liability for overtime should be entered, leaving *only* the damage amount for a jury to determine at trial.

[22] The Employers paid *24* semi-monthly checks annually to Employee instead of *26* bi-weekly checks. [DE68-5, P.80, L.1-12]; [DE68-20, P.1-207].

68-17, P.2-11]. Employee's overtime claim is for the additional 17 overtime hours that he worked weekly for which he was not compensated overtime [DE 9]. In fact, the Employers agree that Employee was paid his fixed biweekly payment based on *57* hours weekly. [DE68-4, P.27, L.2-12]; [DE68-4, P.26, L.13-25]; [DE68-5, P.66, L.24-P.67, L.9]; [DE68-6, P.37, L.18-P.38, L.9];[DE68-7, P.44, L.20-P.45, L.13]; [DE68-8, P.27, L.9-15]; [DE68-8, P.51, L.19 - P.52, L.8]; [DE68-8, P.129, L.7-P.130, L.10]; [DE68-8, P.130, L.22-P.131, L.7]; [DE68-8, P.131, L.17-25];[DE68-8, P.175, L.8-P.176, L.18]; [DE68-20, P.1-207]; [DE 83-8, ¶ 3 and ¶ 4]. However, the Employers now claim that the biweekly salary payment was really hourly pay plus overtime and that it is *doubtful* that Employee worked 57 hours weekly even though his fixed biweekly payment contemplated that amount of hours. The Employers do not know the exact amount they paid Employee for his regular rate of pay; they both said it was nine dollars and change per hour. They claim that they paid Employee $15/hour for overtime when he worked *over* 57 hours weekly[23]. Since the Employers spent considerable amount of their time outside of the U.S. in Nicaragua during the relevant time period, the fixed semi-monthly payment made to Employee was based on the amount of weekly hours that he was *anticipated* to work.

---

[23] As stated prior and in Employee's Statement of Claim, the overtime claim herein is for the 17 overtime hours that were worked regularly during his 57 hour workweeks for which he was paid a fixed salary and *not* the hours that he worked, sporadically, over 57 hours during certain workweeks.

37

"The parties' briefs and exhibits make clear that this presents a pure question of law regarding FLSA's overtime requirements." *Hickman v. TL Transportation, LLC,* 318 F. Supp. 3d 718, 721 (E.D. Pa. 2018). (earning statements based on fixed day pay could not be construed to include overtime as contemplated by FLSA). In *Hickman*, unlike this case, the employer clearly advised the employees, in writing, that the $160 day rate included regular pay for 8 hours and 2 hours overtime pay. The court found that the *Hickman* pay scheme violated the FLSA's overtime requirements since these fixed payments were based on *anticipated*—as opposed to *actual*—overtime hours worked by the employees. In the instant case, the Employers' testimony is clear that the fixed semi-monthly payments made to Employee were based on 57 *anticipated* hours that he would work weekly since they (the Employers) both were absent from the U.S. for considerable periods during the relevant time period and claim that they paid Employee for 57 hours weekly in spite of the fact that they don't believe he worked the same. Also see the very recent decision in *Scalia v. World Marble & Granite Corp.*, No. 19-CV-11211-ADB, 2021 WL 2481255 (D. Mass. June 17, 2021) (fixed salary payments to non-exempt employees do not count as overtime pay.).

Employers are required to keep accurate records of time worked by employees on a weekly basis. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). The Code of Federal Regulations requires that employers' records contain specific

38

information such as the hourly rate and overtime paid to the employee. See 29 C.F.R. s. 516.2[24]. "29 U.S.C. § 211(c) requires employers to "make, keep and preserve records" of employees and of their "wages, hours, and other conditions and practices of employment" in accordance with regulations adopted by the Department of Labor's Wage and Hour Division. 29 U.S.C. § 211(c). Pursuant to the record keeping regulations set out in 29 C.F.R. § 516.2, employers must maintain work time, schedule and pay records for their employees. As to those employees subject to minimum wage and overtime, payroll records must be kept that includes the hours worked each day and week. 29 C.F.R. § 516.2(a)(7). Records for non-exempt employees must be preserved for at least three years. 29 C.F.R. § 516.5(a). Defendants failed to maintain its records in the manner required by 29 U.S.C. § 211(c), 29 C.F.R. § 516.2, and 29 C.F.R. § 516.5." *Lyles v. Burt's Butcher Shoppe*

---

[24] The FLSA requires that every covered employer "shall make, keep, and preserve ... records of the persons employed" and of "the wages, hours, and other conditions and practices of employment maintained" by the employer, and "shall preserve such records for such periods of time" required by regulation. 29 U.S.C. § 211(c). Records must include, among other items, an employee's regular hourly rate; hours worked each workday and each workweek; the total daily or weekly straight-time earnings or wages due; and the total premium pay. 29 C.F.R. § 516.2(a)(6)-(9). Payroll records must be maintained for three years and time records, including timecards, must be retained for two years. 29 C.F.R. §§ 516.5, 516.6. Appellant urges this Court to render a binding opinion clarifying that, absent these required records, employers **cannot** capriciously transmogrify, post-facto, salary payments into hourly and overtime pay. *Buckley v. S.W.O.R.N. Prot. LLC*, No. 1:20-CV-357-HAB, 2022 WL 4598577, at *6 (N.D. Ind. Sept. 30, 2022).

*& Eatery Inc.*, No. 4:10-CV-53 CDL, 2011 WL 4915484, at *6 (M.D. Ga. Oct. 17, 2011). Also see *McLaughlin v. Stineco, Inc.*, 697 F. Supp. 436 (M.D. Fla. 1988). This Court should find, as a matter of law, that the Employers have violated the record keeping requirements of the FLSA, as they were told by their prior legal Counsel to track hours, but they failed to do so nevertheless.  "Although Defendants kept some records of the hours that their employees worked, they did not comply with the FLSA's recordkeeping requirements to make and preserve records of "[h]ours worked each workday and total hours worked each workweek" by their employees. See 29 C.F.R. § 516.2(a)(7). Accordingly, the Court finds that there is no genuine dispute of material fact that Defendants violated the FLSA's recordkeeping requirements. Plaintiff's motion for summary judgment is granted as to his recordkeeping claims". *Scalia v. World Marble & Granite Corp.*, No. 19-CV-11211-ADB, 2021 WL 2481255, at *8 (D. Mass. June 17, 2021). The Employers attempt to convert the "salary payments into hourly plus overtime pay should flatly be rejected since they have no records showing a regular hourly and overtime rate for Employee's fixed semi-monthly payments made during the relevant time period. "Furthermore, § 516.2(a) requires employers to record employees' straight pay separately from overtime payments on a weekly basis. *See e.g., Acosta v. Revolutionary Home Health, Inc.*, Civil Action No. 3:17-cv-1992, 2020 WL 1953594, at *14-15, 2020 U.S. Dist. LEXIS 71966, at *63 (M.D. Pa. Apr. 23, 2020)

40

(granting summary judgment to the Plaintiff Department of Labor, that the defendants violated § 516.2(a) when they failed to keep records of the daily or weekly straight time and overtime earnings where the employer maintained records in two-week intervals)." *Walsh v. Fusion Japanese Steakhouse, Inc.*, No. 2:19-CV-00496-CCW, 2021 WL 2917795, at *8 (W.D. Pa. July 12, 2021).

Therefore, the issue crystalized is: *whether an employer who fails to maintain required documentation as to hourly and overtime pay and weekly hours worked and, instead, consistently issues fixed payments stating "salary" on them, can later claim that the same employee is really an hourly employee who received overtime pay in spite of what is written on his paychecks?* The Employee urges this Court to answer this inquiry in *the negative*. To do otherwise would permit any employer, carte-blanche, to insouciantly transmogrify salary (fixed) payments into hourly and overtime payments post-facto. This would, in turn, frustrate the record keeping requirements contained in the authority cited above and otherwise violate long-standing law as discussed herein.

Employers argued in the lower court that their payment scheme was economically advantageous to the Employee since he received the same pay even when he did not work the full 57 hours weekly. DE 87, P. 10 -11 discusses that the Employers *could have* paid Employee less if they had used the fluctuating workweek

method (FWW), [25] and that the payments made were up to three times greater than they would have been if the FWW method had been used.

However, whether or not *another* payment method *would have been* less advantageous to the Employee is irrelevant: what matters is that the Employers semi-monthly salary payment method violated the FLSA's overtime requirements vis-a vis Employee's 57-hour weekly work schedule. As one District Court recently explained, "In other words, an employer is not entitled to flout 29 C.F.R. § 778.310 (by paying lump sums for *varying* amounts of overtime, i.e., where Section 309 does not apply) and then claim "no harm, no foul." Instead, the alleged overtime is included in the regular rate as straight-time pay and does *not* count toward the overtime premium due the employee for hours worked past 40. As the District Court explained (and the Sixth Circuit subsequently affirmed) in *Min & Kim I*."… "Although it is possible that Defendants might have paid employees the same wages had they complied with the FLSA recordkeeping and overtime requirements, this does not excuse them from FLSA non-compliance here.... It is possible that Defendants could pay their employees the same amounts if they selected an hourly rate and paid overtime compensation as required by the FLSA, as they did with their system of paying a "guaranteed wage," but *what matters is not just the end result, but the methodology used.* The reason for compliance is to ensure that employees

---

[25] The Employers didn't use this method of pay.

are indeed paid overtime. Without adhering to the system required by the FLSA, employees lose the protection of that statute and have no way of proving that they are entitled to overtime pay. The Supreme Court has held that "when employers violate their statutory duty to keep proper records, and employees thereby have no way to establish the time spent doing uncompensated work, the remedial nature of [the FLSA] and the great public policy which it embodies" cannot be vindicated.[emphasis in italics]. *Acosta v. Min & Kim Inc.*, No. 15-CV-14310, 2018 WL 500333, at *7 (E.D. Mich. Jan. 22, 2018), *aff'd*, 919 F.3d 361 (6th Cir. 2019) ("*Min & Kim I*") (emphasis added) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 136 S. Ct. 1036, 1047, 194 L.Ed.2d 124 (2016) and *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 173, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989))." *Scalia v. KDE Equine, LLC*, 486 F. Supp. 3d 1089, 1105 (W.D. Ky. 2020). Also see *Acosta v. Wok on Wheels USA, LLC*, No. SA16CA902FBHJB, 2019 WL 4087621 (W.D. Tex. June 11, 2019), report and recommendation adopted, No. SA-16-CA-902-FB, 2019 WL 5026936 (W.D. Tex. July 26, 2019) ( Fixed payment amounts cannot comply with *778.309* when the employee is paid the same amount even when [he] works less hours due to going home early, days off[26], and when the employer does not track "break" time.); *See Slugocki v. United States,* 816 F.2d 1572, 1578 (Fed. Cir.

---

[26] This is precisely how Appellees paid Appellant his semi-monthly salary. The same amount was paid even when Appellant worked less hours and/or missed work and the same amount was paid for months containing 4 and 5 weeks.

1987); _Allen v. Webster Parish,_ No. 99-31017, 2001 WL 564122, at *2 (5th Cir. May

17, 2001)." _Sliwinski v. EZ Sweep Corp._, No. 8:07-CV-158-T-27MSS, 2008 WL

11385513, at *2–3 (M.D. Fla. July 2, 2008).

### viii.   LAFISE CORP. QUALIFIES AS EMPLOYEE'S JOINT EMPLOYER[27] PURSUANT TO 29 U.S.C. 203(D)

Summary judgment finding that Employer Lafise Corp. was not Employee's joint

employer should be reversed due to substantial evidence showing that Lafise Corp.

fits the employer definition found at 29 U.S.C. 203(D).

At a minimum, Employer Lafise Corp. meets the definition of "employer" found at

29 USC 203(D) which states, in relevant part, "(d) "Employer" includes

any person acting directly or indirectly in the interest of an employer in relation to

an employee....[emphasis]" Employer Lafise Corp., through its HR management, at

least, acted indirectly in the Zamoras' interest in relation to the Employee's

employment for the relevant time frame. This is logical as the Zamoras were out of

the United States for most of the relevant years to this case.

Employee moved for the Court to determine that Employer Lafise Corp. was

his joint employer for the relevant time period along with the Zamoras. Firstly, the

only "employment agreement" for this case is at DE 68-15 (with translation at DE

---

[27] Employers never issued a W2 to Employee during his 15-year employment with them. W2 forms would have at least contained information as to who Employee's employer was and what type of wages or other compensation was paid to him.

68-5, P.55, L.7-P.57, L.9] which, at least, states that Employee worked for Lafise Corp[28]. Secondly, the facts are undisputed that Luisa Franchy and other HR employees at Lafise Corp. not only orchestrated Employee's biweekly payments from Latin American Services Bank in Panama, but regularly told the Employee what to do in connection with his work for Lafise and for the Zamoras. Therefore, the undisputed facts show that Employee was economically dependent or controlled by Lafise Corp just as he was dependent on the Zamoras for his economic livelihood for the years alleged in this case. Employee was controlled by HR employees from Lafise just as he was controlled by the Zamoras. A joint employer relationship existed because the Zamoras used Employee as a "hybrid" employee to perform work both at their private home and for Employer Lafise as well.

A joint employment relationship exists "where a single individual stands in the relation of an employee to two or more persons at the same time." *Gonzalez–Sanchez v. Int'l Paper Co.,* 346 F.3d 1017, 1020 (11th Cir.2003). Under the FLSA, "a worker can be economically dependent on, and thus jointly employed by, more than one entity at the same time." *Id.* at 1021. *Quezada v. Sante Shipping Lines, Inc.*, No. 11-23246-CIV, 2013 WL 1334516 (S.D. Fla. Mar. 29, 2013)

---

[28] In spite of Employers contention that "LAFISE" referenced in this agreement is a different Zamora entity, it was signed by Luisa Francy who is the HR head for the Employer LAFISE CORP.

[For a joint employer analysis], "the Court turns to the factors listed by the Department of Labor in the Code of Federal Regulations. *See* 29 C.F.R. § 791.2. At the outset, it should be noted that the following factors are not exhaustive—"[a] determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the [FLSA] depends upon all the facts of the particular case."

**29 C.F.R. § 791.2(a)(3)(i)**. The relevant factors provided are as follows:

**(i)** There is an arrangement between them to share the employee's services;

**(ii)** One employer is acting directly or indirectly in the interest of the other employer in relation to the employee; or

**(iii)** They share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer. Such a determination depends on all of the facts and circumstances. Certain business relationships, for example, which have little to do with the employment of specific workers—such as sharing a vendor or being franchisees of the same franchisor—are alone insufficient to establish that two employers are sufficiently associated to be joint employers.

29 U.S.C. § 791.2(e)(2). In *Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172, 1175–77 (11th Cir. 2012), the Eleventh Circuit expanded on these guidelines and provided

46

an eight-factor test for courts to consider when determining whether employers are joint employers. These factors include:

**(1)** the nature and degree of control of the workers; **(2)** the degree of supervision, direct or indirect, of the work; **(3)** the power to determine the pay rates or the methods of payments of the workers; **(4)** the right, directly or indirectly, to hire, fire, or modify the employment condition of the workers **(5)** preparation of payroll and payments of wages; **(6)** ownership of the facilities where the work occurred; **(7)** performance of a specialty job integral to the business; and **(8)** investment in equipment and facilities. *Hankerson v. Fort Lauderdale Scrap, Inc.*, Case No. 15-60785, 2016 WL 7508242, at *3 (S.D. Fla. Sept. 8, 2016) (citing *Layton*, 686 F.3d at 1175–77). *Yela v. Trending Media Grp., Inc.*, No. 19-21712-CIV, 2020 WL 6271047, at *5–6 (S.D. Fla. Sept. 18, 2020). DE 68-15 shows the arrangement[29] that was initially agreed to for which Employee would work for Lafise Corp and the Zamoras and the record evidence shows that Employee did work for Lafise Corp. Lafise's HR personnel acted towards Employee just as the Zamoras told them to do. 29 U.S.C 203(D) appears to clearly qualify Lafise Corp. as Employee's joint employer.

---

[29] Inspite of Employers contention that "LAFISE" referenced in this agreement is a different Zamora entity, it was signed by Luisa Francy who is the HR head for the Employer LAFISE CORP.

Employee was paid a semi-monthly salary just like Lafise Corp.'s other employees were paid. Lafise, through is HR employee(s) and the Zamoras, jointly controlled Employee's work. The Zamoras own Lafise Corp. and are the employers for the same Lafise Corp. HR employees who gave instructions to Employee. Lafise Corp. arranged for and orchestrated the payment of Plaintiff's semi-monthly direct deposit pay checks from Latin American Services Corp. The Zamoras owned Lafise Corp. and the facilities where Lafise conducted business for the relevant time period. These factors, and the evidence cited above, support a finding that both Lafise Corp. and the Zamoras controlled and provided the economic support for Employee from 2017 through 2020; thus, the Court should determine that both were Employer's joint employer for the relevant time period.

Further, the Zamoras were physically absent from the United Stated for the vast majority of the relevant time period which is undisputed and therefore, Lafise, Corp., through its HR personnel, directed Employee's work both at the Lafise business as well at the Zamoras' residence when questions arose. Lafise Corp. processed Employee's semi-monthly salary payments and otherwise controlled his work when the Zamoras were not present or able to do so. Additionally, Employer performed work for Lafise Corp directly and under the direction of its HR department. Also *see* the numerous emails exchanged between Lafise's HR Manager and other Lafise employees regarding the Employee [DE 68-17, P.1-11] as well as text messages

48

between Lafise Corp. employees and the Employee [DE 68-18, P.1-22]. Under these facts, highlighted by the Zamoras stark absence from the United States for most of the relevant time period, Lafise Corp. stood in the stead of the latter vis-a vis Employee's employment. Lafise Corp. provided Employee with whatever he needed to do his job and that he lacked while the Zamoras were in Nicaragua. [DE 72-17, P.11, L.14-P.16, L.25 and P.30, L.6-16]. Lafise Corp., through its HR Manager, regularly contacted Plaintiff regarding his work for both the Zamoras and Lafise Corp. The only written document that addresses Employee's employment states that Lafise is the business that he works for. [DE 68-15 with translation at DE 72-10, P.56, L.3-P.57, L.9].

Under the FLSA, "..an "employer" encompasses "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(D). As so defined, an employer is not only a company for whom the employee directly works but also includes "any person who (1) acts on behalf of that employer and (2) asserts control over conditions of the employee's employment." *Josendis*, 662 F.3d at 1298 (citation omitted)." *Shropshire v. Towing & Auto Repair Mgmt. Corp*, No. 8:20-CV-1931-TPB-CPT, 2021 WL 2904907, at *3 (M.D. Fla. Apr. 23, 2021), report and recommendation adopted, No. 8:20-CV-1931-TPB-CPT, 2021 WL 2895741 (M.D. Fla. July 9, 2021); *Mercedes v. HZ & J Servs., LLC*, No. 620CV565ORLPGBDCI, 2021 WL 1830973 (M.D. Fla. Jan. 27, 2021), report and

recommendation adopted, No. 6:20-CV-565-PGB-DCI, 2021 WL 2982419 (M.D. Fla. Feb. 22, 2021). "The FLSA broadly defines "employer" to "include [ ] any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Supreme Court has found the FLSA's employer definition to be "expansive" and has held that "managerial responsibilities" and "substantial control of the terms and conditions of the [employer's] work" create statutory employer status. *Falk v. Brennan*, 414 U.S. 190, 195 (1973)." *Scalia v. Lovett*, No. 8:19-CV-1323-T-24JSS, 2020 WL 5224335, at *3 (M.D. Fla. July 29, 2020), aff'd sub nom. *UNITED STATES DEPARTMENT OF LABOR, Plaintiff-Counter Defendant-Appellee, v. WILLIAM H. LOVETT, JR., d.b.a. Hardee Animal Clinic, Defendant-Counter Claimant-Appellant.*, No. 20-13276, 2021 WL 5321376 (11th Cir. Nov. 16, 2021).

## CONCLUSION

The summary judgment finding that Employee's fixed salary was payment for overtime wages should be reversed and liability should be established in Employee's favor remanding for a jury trial on damages only. Furthermore, the summary judgment determining that LAFISE CORP. was not Plaintiff's joint employer should be reversed and judgment entered establishing LAFISE CORP. as Employee's joint employer. At a minimum, this issue should be remanded for a jury to resolve any disputed facts as to joint employer.

## <u>CERTIFICATE OF SERVICE:</u>

I hereby certify that a true and correct electronic copy of the foregoing was served via CMECF to Angeles G. Cassin, Esq. at cassina@gtlaw.com, of Greenberg Traurig, LLP, 1000 Louisiana, Suite 1700, Houston, TX 77002; to Daniel Pulecio-Boek, Esq. at pulecioboekd@gtlaw.com of Greenberg Traurig LLP., 2101 L Street, N.W., Suite 1000, Washington, DC 20037; and to Brigid F. Cech Samole, Esq. at Brigid.CechSamole@gtlaw.com of Greenberg Traurig LLP., 333 S.E. 2nd Avenue, Suite 4400, Miami FL 33131; Kyle T. Gaines, Esq. at Kyle.Gaines@gtlaw.comof Greenberg Traurig LLP., 333 S.E. 2nd Avenue, Suite 4400, Miami FL 33131 on this 13th day of December 2022. The hard copies are being delivered and will be received by the current due date of this brief which is December 16, 2022.

JH Zidell, Esq.
J.H. Zidell, P.A.
Attorney For Appellant/Employee
300 71st Street, Suite 605
Miami Beach, Florida 33141
Tel: (305) 865-6766
Fax: (305) 865-7167

By:__/s/ JH Zidell_____
    JH Zidell, Esq.
    Florida Bar Number: 0010121

51

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that 14-point Times New Roman font was used throughout this brief, and that 12,970, as counted by Microsoft Word, are extant herein after subtracting those sections excluded from the word count under Rule 32(f) and 11th Cir. R. 32-4.

<div style="margin-left: 50%;">

JH Zidell, Esq.
J.H. Zidell, P.A.
Attorney For Appellant/Employee
300 71st Street, Suite 605
Miami Beach, Florida 33141
Tel: (305) 865-6766
Fax: (305) 865-7167


By:__/s/ JH Zidell_____
    JH Zidell, Esq.
    Florida Bar Number: 0010121

</div>